IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 13 |
| ALAN J. WRIGHT, ) | |
| KRISTINE L. WRIGHT, ) | Bankruptcy No. 08-02079 |
| ) | |
| Debtors. ) | |

### ORDER RE: MOTION FOR ORDER TO SHOW CAUSE

This matter came before the undersigned on November 17, 2011 on Debtors' Motion to Show Cause for Violation of Terms of Chapter 13 Plan and for Sanctions. Debtors Alan and Kristine Wright were represented by Attorney Janet Hong. Creditor American Home Mortgage Servicing, Inc. (AHMSI) was represented by Attorney C. Anthony Crnic.   After the presentation of evidence and argument, the Court took the matter under advisement.   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (L).

### STATEMENT OF THE CASE

Debtors seek sanctions against AHMSI for violations of the Chapter 13 plan. They argue AHMSI failed to give them notice of monthly payment increases.   They argue notice is mandated by the confirmed plan.   This failure to notify led to defaults in Debtors' mortgage payments and two Motions for Relief from Stay in the past two years.   Debtors request actual and punitive damages and attorney fees as sanctions.

**FINDINGS OF FACT**

Debtors filed their Chapter 13 petition on September 26, 2008. On November 24, 2008, the Court confirmed Debtors' Modified Chapter 13 Plan which was filed on October 20, 2008 (Doc. 16). There were no objections to confirmation of this Modified Plan. Paragraph 13(B) of the Plan imposes specific duties on the holders and/or servicers of Debtors' mortgages. These provisions require notice to the Trustee, Debtors and Debtors' attorney of any changes in the monthly mortgage payments (subsection (5)). They also require an annual statement of loan activity (subsection (8)). Subsection 7 allows the creditor to send its customary billing statements, coupons and statements directly to Debtors without violating the automatic stay.

AHMSI is the servicer of Debtors' mortgage which was assigned by Argent Mortgage Company LLC to Deutsche Bank post-confirmation, on December 30, 2008. See Ex. B of Doc. 69-2, at p. 17. On May 13, 2010, AHMSI filed a Motion for Relief from Stay (Doc. 41), asserting Debtors were in default on postpetition payments. This motion was withdrawn on July 28, 2010. On August 8, 2011, AHMSI filed a second Motion for Relief from Stay (Doc. 69), again asserting Debtors were in default on postpetition payments. This motion was withdrawn on September 28, 2011.

Debtors' Exhibit D is a pay history Debtors received from AHMSI dated June 4, 2010. Exhibit C is a pay history from AHMSI dated August 30, 2011. The third column titled "Post Payment Amount" is the amount AHMSI considers to be the monthly payment due. Exhibit C reflects the amounts in this column changed

2

nine times between the 10/10/08 payment and the 02/01/11 payment. Debtors testified that they never received notice of a change in the amount of payment due. They stated that they believed the amount they paid, as set out in the second column titled "Amount Received," was the correct amount to pay to keep their mortgage current. Specifically, Debtor Alan Wright testified that he would not have intentionally made a payment that was $8.30 short, as Ex. C reflects for payment dates 05/01/09, 06/01/09 and 09/01/09.

Debtors testified that their monthly payment of principle and interest is $521.04 according to their Fixed Rate Note dated September 8, 2005. See Ex. C of Doc. 69-2, at p. 19. They assert the monthly amount due should only change if an increase in insurance premium or property tax requires an increase in their monthly escrow payment. The record fails to establish such an increase during the relevant time period. Debtors, however, point out that the increase in the 02/01/11 payment from $680.28 to $755.05 on Ex. C gives the appearance of an increase in escrow.

Also, significantly, there are inconsistent amounts between Exhibits C and D regarding amounts due for five different payment dates – 03/01/09, 08/01/09, 09/01/09, 03/01/10 and 04/01/10. There is no explanation why such a discrepancy should exist. Mr. Wright testified it appears that the amounts were deliberately changed.

Debtors testified that the two Motions for Relief from Stay filed by AHMSI in 2010 and 2011 arose when payments which they believed were adequate were deemed inadequate by AHMSI. As a result, without notice, AHMSI placed one of

3

the Debtors' payments in "suspense."  AHMSI would then draw from the suspense amount until it was fully expended and return Debtors' next payment.  At that time, it declared the loan in default and filed a Motion for Relief from Stay in May 2010.  Debtors testified that they did not know the loan was in arrears until their check was returned.  Had they known, they stated they would have taken care of it.  Debtors contacted AHMSI more than once requesting a payment coupon book but were refused.  AHMSI told Debtors it was not allowed to have contact with them and could not give them a coupon book with which to make payments.  In responding to the Motion for Relief from Stay, counsel for Debtors pointed out to counsel for AHMSI the language of the Chapter 13 plan requiring AHMSI to give notice of payment changes and allowing it to send Debtors statements and coupon books.

In August 2010, Debtors began paying $696.69 per month based on AHMSI's communications with Debtors' attorney.  Nowhere on Exhibit C is that amount identified as the proper payment.  Starting on 02/01/11, the payment amount AHMSI shows being due is $755.05.  Debtors were not informed that the payment amount increased at that time.  Again, AHMSI put a payment in suspense and used it to cover the alleged inadequate payments until it returned a check to Debtors, declared the loan in default, and filed the August 2011 Motion for Relief from Stay.  Debtors testified they were never informed of the correct payment amount until after the Motion was filed.

Mr. Wright testified that he spent five to ten hours addressing each of the Motions for Relief from Stay filed by AHMSI.  This includes time spent contacting attorneys, time away from work and the use of work time to receive faxes in order to learn what was going on with his mortgage.  He also lost vacation time he

4

scheduled in order to attend a hearing which was cancelled at the last minute. Mr. Wright stated the process was very stressful and it was a threatening feeling to think AHMSI would take the home where he and his wife live with their three small children.

Debtor Kristine Wright testified that she spent at least 20 hours tracking down payments, making calls, sending emails, preparing records of payments and payment histories. She stated it was stressful for her and hard to deal with the phone calls and paperwork while trying to take care of three small children. The product of Mrs. Wright's efforts is displayed in Debtors' exhibits.

AHMSI focuses on language in paragraph 3 of the original mortgage which states, in part: "Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section." This Section covers funds for escrow items, including property taxes and insurance premiums. AHMSI argues that because Debtors had the duty to furnish it with notice of changes in amounts covered by escrow, they are obligated to know when their payments changed. Debtors testified they never knew of any changes in escrow amounts. They did not know why AHMSI changed their monthly payment amount, but thought it would only increase if escrow needed to be increased.

After the hearing, the U.S. Trustee filed a Comment regarding Debtors' Motion for sanctions. He notes that no objections to confirmation were filed. The U.S. Trustee states that if the Court finds AHMSI violated the terms of the Plan it should be required to show it has taken steps to ensure such violations do not occur

5

in the future in this case or others.

## CONCLUSIONS OF LAW

In <u>In re Aldrich</u>, No. 08-00520, 2008 WL 4185989 (Bankr. N.D. Iowa Sep. 4, 2008), this Court considered provisions similar to those included in Debtors' confirmed plan.  It recommended language for Chapter 13 plans which allows mortgage creditors to send statements to Debtors post-confirmation and requires an annual summary of loan activity.  <u>Id.</u> at *4-5.  Debtors' plan contains these recommended terms as well as others from <u>Aldrich</u> to which there had been no objection, including the requirements to notify the trustee, debtors and debtors' attorney of any changes to monthly payment amounts.  <u>See id.</u> at 5.

Pursuant to § 1327(a), the provisions of a confirmed Chapter 13 plan bind the debtor and each creditor which has notice of the plan.  <u>In re Burnett</u>, 646 F.3d 575, 581 (8th Cir. 2011).  The Supreme Court has recently stated, in denying a Rule 60(b) motion:  "Where, as here, a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate."  <u>United Student Aid Funds, Inc. v. Espinosa</u>, 130 S. Ct. 1367, 1380 (2010).  Thus, even if the provisions of a Chapter 13 plan are improper, creditors with notice of the plan who fail to object are bound by them.  <u>Burnett</u>, 646 F.3d at 581 (stating "a confirmed plan is given res judicata effect even when it violates the Code").  AHMSI has not argued that it or its predecessor in interest did not receive adequate notice of Debtors' modified plan prior to confirmation.

Many courts have considered complaints similar to Debtors' against mortgage lenders and servicers.  See In re Thrash, 433 B.R. 585, 609-10 (Bankr. N.D. Tex. 2010) (collecting cases); In re Wilson, 2011 WL 1337240, at *12 (Bankr. E.D. La. (Apr. 7, 2011) (noting the case was yet another piece to the puzzle of loan administration, being the fourth published opinion in the district).   For example, the court in In re Cothern, 442 B.R. 494, 501 (Bankr. N.D. Miss. 2010), described the debtor's relationship with AHMSI as Kafkaesque.   In that case, AHMSI bought force place hazard insurance and charged the debtor for the premium even though the debtor repeatedly and accurately told AHMSI that his insurance had never expired.  Id.   The court's prologue quotes from a screenplay: "The incompetence here is absolutely radiant."   Id. at 495; see also In re Tarantola, 2010 WL 3022038, *6 (Bankr. D. Ariz. July 29, 2010) (issuing AHMSI and Deutsch Bank a warning of possible future possible sanctions for inaccurate mortgage information in filings).

In In re Foreman, 2010 WL 2696630, *2 (Bankr. M.D.N.C. July 7, 2010), the mortgage creditor failed to comply with a confirmed plan which required notice to the trustee and debtors of payment changes.   At the closing of the case, the creditor alleged the Debtors had a postpetition arrearage of $12,000.   Id.   The court concluded the creditor waived its right to collect the arrearage where it arose from an increase in payments not noticed to the trustee.   Id. at *3.   Similarly, the court in In re Passavant, 444 B.R. 378, 385-86 (Bankr. S.D. Ohio 2010), found mortgage creditors were bound by the terms of the plan and had waived their right to post-confirmation increases in payments by failing to give proper notice of the increases.   Two recent articles focus on the problems arising nationally in mortgage loan administration and servicing.  See Adam J. Levitin and Tara Twomey, Mortgage Servicing, 28 Yale J. on Reg. 1 (Winter 2011) (stating mortgage servicers'

7

compensation structures, skewed toward foreclosure, create a principal-agent conflict with mortgage lenders); Katherine M. Porter, <u>Misbehavior and Mistake in Bankruptcy Mortgage Claims</u>, 87 Tex. L. Rev. 121 (2008) (finding evidence of endemic servicer overcharges in bankruptcy cases).

Bankruptcy courts have sanctioned mortgage lenders and servicers for abuse of process and under § 105(a). <u>In re Schuessler</u>, 386 B.R. 458, 493-94 (Bankr. S.D.N.Y. 2008) (finding servicers' conduct constitutes an abuse of process and § 105(a) authorizes sanctions of increasing severity). Postconfirmation improprieties by mortgage lenders and services can be considered a violation of the automatic stay as well as of the order of confirmation, sanctionable under the inherent power of the court. <u>Thrash</u>, 433 B.R. at 610; <u>In re Hill</u>, 437 B.R. 503, 522 (Bankr. W.D. Pa. 2010) (declining to impose additional sanctions against Countrywide Home Mortgage in light of the very favorable $100,000 settlement which made the debtor whole). The Court notes, however, that published opinions sanctioning lenders and services are rare because the parties generally resolve their disputes with settlements. <u>See, e.g.</u>, <u>Hill</u>, 437 B.R. at 547; <u>In re Stewart</u>, 647 F.3d 553, 558 (5th Cir. 2011); <u>In re Price</u>, 403 B.R. 775, 793 (Bankr. E.D. Ark. 2009) (stating a hearing would be set on damages for claim against servicer under RESPA); Doc. #36 in Adv. 07-01184, setting out Settlement and Release Agreement).

As noted by other courts, new amendments to the Federal Rules of Bankruptcy Procedure address the type of problems which have arisen in this case. <u>In re Carlton</u>, 437 B.R. 412, 429-30 (Bankr. N.D. Ala. 2010). Rule 3001 and 3002.1 effective December 1, 2011, as well as new claims forms for mortgage

lenders, address many notice issues.  Id. at 429.   The court in In re Jackson, 446 B.R. 608, 610 (Bankr. N.D. Ga. 2011), noted that these Rule amendments address the problem of mortgage lender's erroneous accounting for or improper application of payments.

The Court may in its discretion take judicial notice of public records, such as the docket and filings in pending judicial proceedings, pursuant to Federal Rule of Evidence 201.  Stutzka v. McCarville, 420 F.3d 757, 761 (8th Cir. 2005); Catholic Order of Foresters v. U.S. Bancorp Piper Jaffray, Inc., 337 F. Supp. 2d 1148, 1159 (N.D. Iowa 2004).   In a Chapter 13 case pending in this district, In re Carleton, No. 08-01502, Doc. 77, AHMSI filed a Notice of Payment Change on September 21, 2010.   It is interesting to note that the same name, Bill Taylor, appears as signatory on that Notice and on Doc. 37 filed in the Wright's case on April 1, 2009 and titled "Transfer of Claim."   Also, the plan language in paragraph 13 of the Wrights' modified plan is identical to that in the Carleton case.   Compare No. 08-01502, Doc. 30 with No. 08-02079, Doc. 16.   Thus, at the same time AHMSI was filing Motions for relief from the stay in this case without giving Debtors notice of payment changes, it was complying with the confirmed Chapter 13 plan in the Carleton case by filing a Notice of Payment Change.

## ANALYSIS

Based on the foregoing, the Court concludes it has discretion to sanction AHMSI for violating the terms of the confirmed plan.   Confirmation of the plan binds AHMSI to its terms.   It has violated those terms by failing to notify Trustee, Debtors and Debtors' attorney of changes in plan payments.   In addition, it has

failed to respond to Debtors requests for payment information and has not prepared and distributed annual statements showing activity on Debtors' loan. During the relevant time period, AHMSI obviously knew what its obligations were under the plan but failed to act on those obligations in this case.

Considering the time spent and the stress and frustration suffered by both Debtors, the Court finds compensatory damages are appropriate. The Court considers AHMSI's conduct to be willful. It failed to object to the plan. It was reminded of its continuing duties under the plan in 2010, but it repeated its improprieties in 2011 by failing to give notice of payment increases and filing a second Motion for Relief from Stay. The Court must conclude that AHMSI's attitude and conduct in this matter is indefensible. The Court finds, based on the evidence, that Debtors have suffered actual loss of $10,000. Additionally, punitive damages are awarded in favor of the Debtors in the amount of $40,000. In addition, the Court will award Debtors appropriate attorney fees. Counsel for Debtors shall file a statement with a calculation of attorney fees incurred in this matter, as well as the stay motions.

**WHEREFORE**, for violation of plan provisions, the Court awards Debtors Alan and Kristine Wright actual damages against American Home Mortgage Servicing, Inc. (AHMSI) in the amount of $10,000.

**FURTHER**, the Court awards punitive damages in favor of Debtors Alan and Kristine Wright and against American Home Mortgage Servicing, Inc. (AHMSI) in the amount of $40,000.

**FURTHER**, the Court awards Debtors attorney fees in an amount to be set out in a statement to be filed by counsel for Debtors on or before January 17, 2012.

**FURTHER**, by way of additional sanction, American Home Mortgage Servicing, Inc. (AHMSI) is prohibited from raising the amounts due by Debtors to AHMSI, either base amount, escrow, or other "administrative" fees of any kind without motion to this Court and specific approval by this Court of such an increase.

**FURTHER**, judgment shall enter accordingly.

Dated and Entered: December 28, 2011

_____
PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE